UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES,

-vs-

ANDREW WRIGHT
a/k/a Charles Rainey,

                              Defendant.

_____

AMENDED[1]
DECISION and
ORDER

10-CR-6128 CJS-8

## INTRODUCTION

Now before the Court is Andrew Wright's ("Defendant") "Motion Requesting Compassionate Release and/or Sentence Reduction Pursuant to 18 U.S.C. 3582(c)(1)(A) and Section 603(b) of the First Step Act." (ECF no. 626).  For reasons explained below the application is denied.

## BACKGROUND

The reader is presumed to be familiar with the underlying facts of this case, which are chilling.  Very briefly, Defendant was a member of a marijuana distribution ring who, along with two of his co-defendants, traveled to Rochester and committed a cold-blooded execution of three men who they believed had cheated them out of drugs and money.  Following a jury trial, Defendant was convicted of violations of 21 U.S.C. §§ 846 & 851 (Conspiracy to Possess with Intent to Distribute and to Distribute 1,000 Kilograms or More of Marijuana), 18 U.S.C. § 924(c)(1) (Possession of a Firearm in Furtherance of a Drug Trafficking Crime), 18 U.S.C. §§ 924(c)(1) & 924(j)(1)&(2) (Possession and Discharge of a Firearm in Furtherance of a Drug Trafficking Crime and with Such Firearm Did Commit Murder) and 21 U.S.C. § 848(e)(1)(A) (Conspiracy to Possess with Intent to Distribute and to Distribute 1,000 Kilograms or More of Marijuana, and Did Intentionally Kill and Cause the Intentional Killing of an Individual).

---

[1] The amendment is to correct a typographical error in the original Decision and Order indicating that Defendant was sentenced principally to four concurrent, not consecutive, life sentences.

The Court sentenced Defendant principally to four consecutive life sentences plus sixty months, to run consecutive to a 240-month sentence imposed in a separate case, 6:10-CR-6166-001.

The United States Court of Appeals for the Second Circuit denied an appeal by Defendant and his two co-defendants, Aston Johnson ("Johnson") and Richard Anderson ("Anderson"), stating in pertinent part:

> Defendants, who were participants in a cross-country marijuana-distribution operation, were convicted under drug-conspiracy, firearm-possession, and murder statutes in connection with their murders of Robert Moncriffe, Mark Wisdom, and Christopher Green (together, the "Victims") in Greece, New York.
>
> ***
>
> [T]he evidence was plainly sufficient to find Wright guilty of the charged offenses. In addition to the effectively unchallenged evidence that Wright participated in a drug-distribution conspiracy with Johnson and Anderson, the government offered compelling evidence that Wright participated in the planning and execution of the murders. The government presented witness testimony and CSLI records showing that Wright booked a flight to Columbus, Ohio, rented a car, obtained two firearms, and drove to Rochester, New York, where he stayed in a Holiday Inn Express along with the other suspects. Ballistics evidence showed that one of the firearms Wright obtained in Columbus matched shell casings found at the murder scene. Video evidence also showed that on the day of the murders, Wright and Johnson left the Holiday Inn Express together and traveled to a Comfort Inn, where Johnson rented a room. Further video evidence showed that Wright and Anderson thereafter left the Holiday Inn Express together, traveling in the direction of the murder scene, and that Anderson, Wright, and Johnson all returned to the Comfort Inn approximately fifteen minutes after the 911 call alerting police to the murders. Wright and Anderson left about ten minutes later, and drove back to Columbus. The government also presented evidence that approximately one week after the murders, Wright discussed a firearm he obtained in Columbus with the man who supplied it, indicating that the transaction had served its purpose and that Wright had disposed of the firearm.

Second Circuit Case 14-1027, Document 469 at pp. 1, 6–7.  Wright, who is now 51

years of age, is serving his sentence at USP McCreary.

On June 21, 2021, Defendant, proceeding *pro se*, filed the subject motion (ECF No. 626), captioned as a "Motion Requesting Compassionate Release and/or Sentence Reduction Pursuant to 18 U.S.C. 3582(c)(1)(A) and Section 603(b) of the First Step Act."   The motion argues that "the Covid-19 Pandemic and the nature and circumstances of the Defendant's offense" constitute "extraordinary and compelling reasons" to grant the application.

More specifically, the motion begins by purporting to review the evidence that was produced at trial, and argues that, "[I]t's clear that the Defendant was not involved in these murders[.]" Indeed, Defendant asserts that he is merely "a non-violent drug offender, serving a life sentence for selling marijuana."

Alternatively, the motion cites the potential threat to Defendant from Covid-19, stating that he is at increased risk since he suffers from obesity, diabetes, high blood pressure and seizures.  The application also indicates that USP McCreary has been on extended "lockdown" under the Federal Bureau of Prison's ("BOP") plan for combatting Covid-19, making Defendant's sentence "harsher and more punitive" than it otherwise would have been.

In sum, Defendant's application for compassionate release, liberally construed, is based on a combination of purported "extraordinary and compelling reasons," namely, Defendant's alleged innocence of the murders; the danger to him from Covid-19; and the lockdown conditions at USP McCreary.  Defendant contends that he exhausted his administrative remedies before filing the subject application.

On July 22, 2021, the Government filed a response, opposing Defendant's application.  The Government first contends that Defendant "was and remains a brutal and violent man."  The Government bases that assessment on Defendant's involvement in the three aforementioned murders, his assault of two federal law enforcement officers while awaiting trial before this Court (for which he received an additional 240-month prison sentence) and his commission of five disciplinary infractions while incarcerated,

one of which involved him stabbing a fellow inmate.   Particularly, with regard to the murders, the Government indicates that Defendant's claim of innocence was disproven by the evidence at trial.   The Government further maintains that Defendant's alleged concern about Covid-19 is not sincere since he has twice declined to receive the Covid-19 vaccine.    The Government also points out that Defendant is not at great risk of contracting the virus at USP McCreary anyway, since that facility has few if any positive cases of infection at present.   The Government appears to concede that Defendant exhausted his administrative remedies before filing the instant motion.

DISCUSSION

Defendant filed the subject application *pro se*, and consequently the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).   The legal principles applicable to Defendant's motion are clear:

> As part of the First Step Act of 2018, Congress authorized courts to consider an inmate's motion for a discretionary sentence modification for "extraordinary and compelling reasons," often colloquially called a motion for compassionate release. *See* Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (amending 18 U.S.C. § 3582(c)(1)(A)).

*U.S. v. Saladino*, 7 F.4th 120, 121 (2d Cir. 2021).

> [T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of [U.S. Sentencing] Guideline § 1B1.13, limits the district court's discretion.

*United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).   "Even if 'extraordinary and compelling' circumstances exist, a district court may not reduce a defendant's sentence before considering 'the factors set forth in section 3553(a) to the extent that they are applicable.'" *United States v. Cummings*, No. 20-3156-CR, 2021 WL 4142844, at *1 (2d Cir. Sept. 13, 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)).

With these principles in mind, the Court first finds that Defendant's claim of

4

innocence for the triple murders is not credible, and is therefore not an extraordinary or compelling reason to grant his application.  In that regard, Defendant asserts that he "was not involved in these murders" and that he is merely "a non-violent drug offender," but the evidence at trial strongly showed otherwise.

Nor does the Court find Defendant's alleged fear of contracting Covid-19 to be an extraordinary and compelling reason.  The Government indicates, and Defendant has not disputed, that Defendant has twice declined the Covid-19 vaccine, and he offers no reason for that.  Additionally, the Bureau of Prisons' website indicates the USP McCreary presently has zero inmates, and only one staff member, testing positive for Covid-19.[2]  Moreover, the Court does not consider the Covid-19-related "lockdown" conditions at USP McCreary to be an extraordinary and compelling reason to free Defendant.

Additionally, the § 3553(a) factors do not support a sentence reduction in this action, due to the exceedingly grave nature of the crimes and Defendant's extensive criminal history.

Consequently, Defendant's application (ECF No. 626) is denied.

SO ORDERED.

Dated:  Rochester, New York
        November  3, 2021

                                    ENTER:

                                    /s/ Charles J. Siragusa
                                    CHARLES J. SIRAGUSA
                                    United States District Judge

---

[2] https://www.bop.gov/coronavirus/  (last checked 10/27/21).